**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**INTERNATIONAL HOD CARRIERS, BUILDING AND COMMON LABORERS' UNION OF AMERICA, LOCAL NO. 41, Respondent.**

**No. 13284.**

United States Court of Appeals
Seventh Circuit.

Nov. 3, 1961.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Russell Specter, Atty., Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin Pollack, Attys., N. L. R. B., Washington, D. C., for petitioner.

Bernard M. Mamet, Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and DUFFY and KILEY, Circuit Judges.

DUFFY, Circuit Judge.

The Board seeks enforcement of its order issued February 2, 1961 against respondent, International Hod Carriers, Building and Common Laborers' Union of America, Local No. 41, hereinafter called the "Union." The Board's decision and order are reported at 129 NLRB No. 177.

During February, March and April, 1960, the A. E. Anderson Construction Company was engaged in the construction and repair of blast furnaces owned by Youngstown Sheet and Tube Company. Anderson employed about fifty laborers on a night shift, one of whom was John Jeffries. On March 2, 1960, when Jeffries first reported for work, one Edward Blalock asked Jeffries if he had a union card. Jeffries replied he did not. Later that night, Blalock told Jeffries "If you ain't got no card when you come back tomorrow you can't work."

658

The following night Blalock again asked Jeffries for his card and when Jeffries failed to produce one, stated, "You can't work because you ain't got no card." Jeffries was discharged the following night by foreman Burr who told him, "I got to lay you off because you ain't got no card because I don't want to get in bad with the Union."

The Board held that by threatening Jeffries with loss of employment for failure to possess a union card or permit, the Union violated sec. 8(b) (1) (A) of the National Labor Relations Act, 29 U.S.C. A. § 158(b) (1) (A), by restraining and coercing Jeffries in the exercise of his statutory right to refrain from union activities. The Board found, as had the trial examiner, that Blalock was the Union's night steward on the construction project.

The Union insists that Blalock was not a steward or an agent of the Union within the meaning of sec. 2(13) and sec. 8(b) of the Act. The Union argues the collective bargaining agreement defines the duties and responsibilities of a steward, and that Blalock did not perform such specified duties.

■ The record supports the Board's finding that Blalock was a steward of the Union. Union members designated as job stewards usually wear identifying badges supplied by the Union. Blalock wore a steward badge. Among the steward's functions is that of checking the union status of new employees. By his own admission, Blalock checked the cards of at least seven or eight laborers. Stewards on outside construction jobs such as the one in this case, performed various services for the other employees, including keeping the workmen's shack clean. Blalock performed such duty.

Stone was the Union's daytime steward on this job. Stone told Stanley Stout, an applicant for employment, that Blalock was the steward on the night shift. When Stout was hired and reported for work on the night shift, Blalock approached him and asked to see his union card. Stout produced his card when Blalock identified himself as the night shift steward.

There was testimony that occasionally stewards were not designated on small jobs, but a job employing forty-five to fifty laborers on the night shift was not regarded as a small job.

■ We hold that substantial evidence supports the Board's finding that the Union, through its agent Blalock, violated sec. 8(b) (1) (A) of the Act, by threatening Jeffries with loss of employment because he did not have a union card or work permit.

The order of the Board will be enforced.